**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

MELVIN HIGHTOWER and
SUE HIGHTOWER                                                                                          PLAINTIFFS

VERSUS                                                             CIVIL ACTION NO. 4:04CV317-P-B

WATSON QUALITY FORD, INC., and
U.S. BANK, f/k/a FIRSTAR BANK, N.A.                                                        DEFENDANTS

## MEMORANDUM OPINION

This cause is before the Court on the plaintiffs' Motion to Remand [7-1]. The Court, having reviewed the motion, the response, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL BACKGROUND

This cause of action arises out of the repossession and sale of an automobile. On December 31, 2001, Melvin and Sue Hightower purchased a 2001 Ford Taurus from Watson Quality Ford, Inc. ("Watson"). Watson financed the Hightower's purchase under a Mississippi Retail Installment Contract and Security Agreement. Watson immediately assigned the loan to Firstar Bank, now known as U. S. Bank ("USB").

The Hightowers subsequently defaulted on the loan agreement. USB repossessed the automobile. On or about December 18, 2002, USB sent the Hightowers a letter notifying them of USB's intent to dispose of the vehicle at a private sale after December 30, 2002 and informing them that they could redeem the automobile prior to its sale "by paying us the full amount you owe (not just the past due payments), including our expenses." Because the Hightowers could not pay the

entire indebtedness, they took no action to redeem the vehicle. USB sold the car at auction for $7,100 and notified the Hightowers of an outstanding deficiency of $9,820.71 via mail on March 6, 2003.

The Hightowers filed a complaint in the Circuit Court of Carroll County on August 31, 2004. The complaint named both Watson Quality Ford and U. S. Bank as defendants. The Hightowers alleged that USB and its assignor, Watson, tortiously breached the terms of the loan contract by failing to comply with the provisions of Mississippi Code Annotated § 75-9-614 in that they did not advise the Hightowers of their right to redeem the vehicle by paying the amount then due or past due, plus expenses and attorney's fees–exclusive of any amount that would not otherwise be due except for the acceleration of the loan. The Hightowers sought recovery of contractual, consequential and punitive damages against the defendants for their breach of contract.

The defendants removed the case to federal court on October 21, 2004, asserting jurisdiction based on 28 U.S.C. § 1332, the diversity statute.[1] The plaintiffs filed a timely motion to remand in which they contend this Court lacks subject matter jurisdiction. The matter has been fully briefed and is ripe for decision.

The Hightowers are citizens of Mississippi. USB is a national banking association that has its registered office in Ohio and its principal place of business in Minnesota. As Watson is a corporation organized under the laws of the State of Mississippi and having its principal place of business in said state, complete diversity is lacking for purposes of subject matter jurisdiction. Hence, the propriety of removal turns on whether Watson was fraudulently joined for the purpose

---

[1] Defendants also asserted jurisdiction under 28 U.S.C. §§ 1334(b) and 1452(a). They have since abandoned that argument.

of defeating federal jurisdiction.[2] [3]

## STANDARD OF REVIEW

It is axiomatic that the party seeking removal bears the burden of proving the jurisdictional prerequisites. Where the basis for removal is diversity jurisdiction based on an allegation of fraudulent joinder, the defendant bears a heavy burden in establishing the right to a federal forum. The removing defendant must present clear and convincing evidence of fraudulent joinder in order to avoid remand. Rogers v. Modern Woodmen of America, 1997 WL 206757, *2 (N.D. Miss. 1997). Fraudulent joinder may be proven in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Travis v. Irby, 326 F.3d 644 (5th Cir. 2003). Only where a plaintiff cannot posit a reasonable basis for predicting that state law would allow recovery may a defendant prevail on an allegation of fraudulent joinder.

The existence of a cognizable claim is to be determined by reference to the allegations contained in the plaintiff's state court pleadings. Ironworks Unlimited v. Purvis, 798 F. Supp. 1261, 1263 (S.D. Miss. 1992). The Court is also free to pierce the pleadings by considering summary judgment-type evidence such as affidavits and deposition testimony. Carriere v. Sears, Roebuck and Co., 893 F.2d 98, 100 (5th Cir. 1990). But in doing so, however, the Court must remain mindful not to overstep its province by transforming the jurisdictional inquiry into one that is merits-based. B,

---

[2] Plaintiffs concede that the amount in controversy exceeds § 1332's jurisdictional minimum.

[3] The citizenship of a fraudulently joined defendant must be disregarded when considering whether the diversity requirement is satisfied. Badon v. R.J.R. Nabisco Inc., 224 F.3d 382, 389 (5th Cir.2000).

Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981). In determining whether the joinder of a party was fraudulent, the district court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff." B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981). Similarly, any uncertainties in the substantive law must also be resolved in favor of the plaintiff. Head v. United Ins. Co. of America, 966 F. Supp. 455, 457 (N.D. Miss. 1997).

## LEGAL ANALYSIS

I.      Motion to Remand

USB contends that under the facts pled, and as supplemented by the record, there is no basis under Mississippi law for a recovery against Watson. USB points out that Watson's assignment of the loan contract was without recourse; consequently, Watson retained no continuing interest in the loan. It is without dispute that Watson had no further interaction with the Hightowers concerning the servicing of the loan. In point of fact, plaintiffs base their entire complaint on the post-assignment conduct of Watson's assignee, USB.

Plaintiffs admit Watson effectively relinquished its rights under the contract upon the assignment to USB. Plaintiffs' claims against Watson are not so easily dismissed, however. They urge that their cause of action against Watson rests, not on misconduct chargeable to Watson, but on Watson's continuing <u>duties</u> under the loan agreement notwithstanding its assignment of the <u>benefits</u> of the contract. In short, plaintiffs urge that the assignment to USB did not operate to divest Watson of its duties and obligations under the agreement and that Watson is secondarily liable for any deficiencies in performance by USB.

4

There is scant case law on the point in question and the Mississippi cases cited by plaintiff present no truly analogous factual circumstances.[4] However, general principles of contract law support the plaintiffs' liability theory. As noted in 6 Am. Jur. 2d Assignments § 165:

> A mere assignment does not release the assignor from his or her obligations to the other party under the assigned contract, absent an express agreement to that effect, other than a recitation in the contract itself that it may be assigned; an agreement that can be implied from facts other than the other contracting party's consent to the assignment; or the consent of the obligee . . . .
>
> Even if an assignee assumes the obligations of the contract, the assignor remains secondarily liable as a surety or guarantor. The assignor remains liable to the obligor for the assignee's defective performance, just as he or she would be liable for his or her own defective performance.

Id.[5] State courts in other jurisdictions also apply the same tenet. See Auerbach v. State Tax Commission, 142 A.D.2d 390 (New York 1988); Moring v. Miller, 330 So.2d 93 (Fla. Dist. Ct. App. 1976); Saxe v. Feinstein, 77 A.2d 419 (Penn. 1951). The Mississippi Supreme Court endorsed the

---

[4] See Necaise v. Oak Tree Savings Bank SSB, 645 So.2d 1311 (1994); Gilchrist Tactor Company v. Stribling, 192 So.2d 409 (Miss. 1967); Simmons v. Smith County Bank, 83 So.2d 441, 443 (Miss. 1955).

[5] See also 6A C.J.S. Assignments § 120:

Generally, a contracting party cannot, by an assignment of the contract, relieve himself or herself of his or her obligations under the contract. Accordingly, unless permitted by the provisions of the contract, unless the other contracting party has consented to release the assignor, or unless there is a novation of the contract, a delegation of duties or obligations does not relieve the assignor from liability under the contract without the consent of the obligee. Rather, after the assignment, the assignee becomes primiarly liable for the obligations under the contract, while the assignor remains secondarily liable as a guarantor, and the debtor may then sue the assignor, the assignee, or both.

5

same proposition in Capitol Toyota, Inc. v. Gervin, 381 So.2d 1038 (Miss. 1980), albeit dicta.[6]

In its opposition brief, USB attempts to distinguish the law cited by plaintiffs on several grounds. First, USB points to the loan contract itself and argues that the Hightowers consented to the assignment from the inception of the loan. It urges that the plaintiffs' remittance of loan payments to USB as assignee amounted to a novation resulting in the discharge of Watson's duties under the contract. The bank cites 6 Am.Jur.2d § 166 as support for its position. However, USB ignores its burden of showing that the Hightowers acted with knowledge that Watson had repudiated its duties under the assigned contract. There is a dearth of evidence to support such a finding under the present record.

As a second matter, USB urges that the general contract principles enunciated above have no application where the assignment involves chattel paper, as in this case. Neither of the cases cited by USB supports such an interpretation.[7] Indeed, plaintiffs cite to cases from other jurisdictions which pointedly reject USB's argument. See First American Commerce Co. v. Washington Mutual Savings Bank, 743 P.2d 1193 (Utah 1987); Cuchine v. H.O. Bell, Inc., 682 P.2d 723 (Mont. 1984). In the absence of an unequivocal pronouncement by Mississippi's high court and being ever mindful of the duty to resolve all uncertainties in the substantive law in favor of plaintiffs, the Court finds USB's argument on this point unavailing.

---

[6] "We are of the opinion that the purported assignment operated as a delegation of performance of the 1974 agreement, making Gear and Hall [assignees] answerable under it and leaving Coleman and Polk [assignors] jointly and severally liable to Gervin as sureties by operation of law." Gervin, 318 So.2d at 1039.

[7] See EB, Inc. v. Allen, 722 So.2d 555 (Miss. 1998); International Harvester Co. v. Peoples Bank and Trust Co., 402 So.2d 856 (Miss. 1981).

Finally, USB attempts to recast plaintiffs' breach of contract claims as statutory violations chargeable only to USB as secured party under Article 9 of the Uniform Commercial Code. Plaintiffs maintain otherwise. They point out that the contract provides that Mississippi law is to govern the transaction and the parties' conduct thereunder. Pursuant thereto, plaintiffs urge the well-recognized rule that "the law in force at the time a contract is made forms a part of it and is written into the contract as much as if expressly incorporated therein." Mississippi Valley Gas Co. v. Boydstun, 92 So.2d 334, 340 (Miss. 1957). It is undisputed that Mississippi law extends debtors certain rights of redemption when collateral is pledged for a loan. Mississippi Code Ann. § 75-9-623. In addition, §§ 75-9-613 and 614 require that debtors receive particular information prior to disposition of collateral. Mississippi Code Ann. §§ 75-9-613 and 614. Plaintiffs aver that USB's failure to abide by these provisions of Mississippi law amounts to a breach of the contract terms and the implied covenant of good faith and fair dealing for which both Watson and its assignee are potentially liable. The Court, after due consideration of the underlying facts and authorities, finds the Hightowers' argument persuasive. The defendants have offered nothing to refute the sound legal reasoning advanced by plaintiffs.

Based on the foregoing analysis, this Court cannot say that there is no reasonable possibility that the plaintiffs will be able to recover in state court against defendant Watson. USB has failed to demonstrate to this court, by clear and convincing evidence, that Watson has been fraudulently joined in this action to defeat the exercise of diversity jurisdiction by this Court.

II.     Request for Attorney's Fees

Plaintiffs have requested an award of attorney's fees pertaining to the Motion to Remand. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs

and any actual expenses, including attorney fees, incurred as a result of the removal." Courts have discretion under the statute to determine whether costs and expenses should be awarded. See Avitts v. Amoco Production Co., 111 F.3d 30, 32 (5th Cir. 1997). The Court finds that the circumstances of this case do not warrant such an award. Accordingly, the plaintiffs' petition for attorney's fees should be denied.

## CONCLUSION

Based on the foregoing analysis, the Court finds that the plaintiffs' Motion to Remand [7-1] is well-taken and should be granted. However, plaintiffs' request for attorney's fees is not well-taken and should be denied. An Order will issue accordingly.

This, the 7th day of June, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE